JOHN GLADYSZ ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN
OF PLAINVILLE ET AL.
(SC 16346)

Norcott, Palmer, Vertefeuille, Corradino and Gordon, Js.

Argued January 12—officially released May 22, 2001

*Hugh I. Manke,* for the appellant (defendant Plainville NWD Limited Partnership).

*Lawrence J. Golden,* for the appellees (plaintiff Carol Salyards et al.).

*Opinion*

NORCOTT, J. This case requires us to determine whether the Appellate Court improperly concluded that the doctrine of collateral estoppel barred the defendant from establishing standing to apply for site plan approval. The trial court rendered judgment dismissing the plaintiffs'[1] appeal, which claimed that the named defendant, the planning and zoning commission of the town of Plainville (commission), improperly had granted site plan approval to the defendant, Plainville NWD Limited Partnership (partnership), for construction of a retail development on certain real property on which a related entity held an option. The Appellate Court reversed the trial court's judgment, concluding that collateral estoppel prevented the partnership from establishing standing to apply. *Gladysz* v. *Planning & Zoning Commission,* 57 Conn. App. 797, 798, 750 A.2d 507 (2000). We reverse the judgment of the Appellate Court.

The following relevant facts are aptly set forth in the Appellate Court opinion. "The property that was the subject of the application was owned by the Tyler Farms Group. The owners entered into an option agreement and purchase and sale agreement (option) for the subject property with Plainville NWD Real Estate Trust (trust). The site plan application was made by the partnership, which paid all of the option costs and application expenses. The trust and the partnership had an oral agreement that the trust would assign the option to the partnership upon the issuance of the permits necessary for the development. The partnership is made

---

[1] The plaintiffs at trial were John Gladysz, Carol Salyards and Lawrence Salyards. Only the Salyards were found to be aggrieved. We therefore refer to the Salyards as the plaintiffs in this opinion.

up of the beneficiaries of the trust, with Charter House Development Corporation as general partner.

"In November, 1994, the partnership applied for site plan approval for construction of a retail development of more than 135,000 square feet. This application was denied by the commission and by the inland wetlands and watercourses commission. The partnership appealed from those denials, and the trial court, *Handy, J.,* dismissed both appeals. The partnership's aggrievement was not contested in those appeals, and the court found, in part on the basis of testimony that the owners had entered into an agreement with the partnership for an option to purchase the property, that the partnership was aggrieved.

"On April 13, 1995, the partnership filed an application for site plan approval for a 102,000 square foot development.[2] The commission approved that application with conditions on November 30, 1995. The partnership appealed, contesting the permit conditions,[3] and the plaintiffs appealed from the decision to approve the site plan application.

"The commission moved to dismiss the partnership's appeal, claiming that the partnership had no legally cognizable interest in the subject real estate and, thus, was not aggrieved, and that the court therefore lacked subject matter jurisdiction. The trial court, *Handy, J.,* after a hearing, granted the motion in a memorandum of decision dated January 21, 1997, stating that there

[2] Although it made the site plan application and paid all of the costs and expenses necessary thereto, the partnership has never owned the subject property. The facts, which are not in dispute, are that the trust had an option to purchase the property and had agreed to assign that option to the partnership upon the issuance of the permits necessary for the proposed development.

[3] The inland wetlands and watercourses commission also had approved the application with conditions. The partnership appealed from those conditions but withdrew that appeal.

was no evidence before the court that the partnership possessed an interest in the property and therefore it was not aggrieved, that the option existed between the trust and the owners, and that the trust and the partnership were separate legal entities. The partnership did not appeal.

"In their appeal from the decision approving the site plan application, the plaintiffs claimed, inter alia, that the partnership lacked standing to apply for site plan approval. Under Connecticut law, a party applying to a planning and zoning commission must have a sufficient interest in the subject property to have standing to apply; *Richards* v. *Planning & Zoning Commission*, 170 Conn. 318, 321–22, 365 A.2d 1130 (1976); and, here, the plaintiffs claimed that the partnership lacked such an interest. The trial court, *McWeeny, J.*, dismissed the appeal, deciding that the partnership was a real party in interest and had standing to apply. The court found that the partnership had an equitable interest in the property by virtue of its agreement with the trust, and the payment of the option costs and expenses incurred in pursuing the application. The court recognized that in a related case involving the partnership's appeal from the decision of the commission imposing conditions on site plan approval, the commission had successfully contested the aggrievement of the partnership and that the appeal was dismissed because the partnership had no interest in the property and, thus, was not aggrieved. The court noted, however, that standing and aggrievement may constitute separate issues and that it was not 'persuaded by such decision.'

"The plaintiffs filed a motion to reargue, claiming that Judge Handy's decision that the partnership lacked an interest in the property precluded the partnership from litigating that issue in the plaintiffs' appeal under the doctrine of collateral estoppel. The motion to reargue was denied on the ground that standing was not

an issue in the previous case involving the partnership's appeal of the conditions of site plan approval, and the reference in Judge Handy's memorandum of decision to the partnership's lack of interest in the property was dicta." *Gladysz* v. *Planning & Zoning Commission*, supra, 57 Conn. App. 798–801.

The plaintiffs appealed to the Appellate Court, which reversed the judgment rendered by Judge McWeeny and rejected the partnership's claim that different standards exist for determining aggrievement and standing to apply. Id., 805. The Appellate Court applied the doctrine of collateral estoppel to prevent relitigation of the issue. Id., 806. The court reasoned that "[w]hile the earlier case [before Judge Handy] involved aggrievement and the present case involves standing, the underlying question common to both cases is whether the partnership has an interest in the subject property. Thus, in the context of this zoning case involving a site plan application by a nonowner, the issue to be decided is essentially the same one decided by the earlier trial court. The determination by Judge Handy that there was no evidence that the partnership possessed an interest in the property necessarily precludes any claim that the partnership possessed a substantial interest in that property." Id., 805.

The partnership petitioned for certification, which we granted on July 13, 1999. The certified question in this appeal is "[d]id the Appellate Court properly conclude that the doctrine of collateral estoppel barred the defendant Plainville NWD Limited Partnership from establishing its standing to apply for site plan approval?" *Gladysz* v. *Planning & Zoning Commission*, 254 Conn. 904, 755 A.2d 880 (2000). In order properly to address this issue, we must first address whether different standards exist for determining aggrievement and standing to apply.

The partnership argues that collateral estoppel is not applicable to the present case because the issue sought to be litigated is not the same as the one previously decided, namely, the question of whether the partnership has standing to apply is different from the question of whether the partnership is properly aggrieved. The partnership also claims that because the issue of standing to apply was not actually litigated or necessarily determined in the trial court decision issued by Judge Handy,[4] collateral estoppel does not bar litigation of that specific issue. Conversely, the plaintiffs argue that collateral estoppel precludes the partnership from litigating the issue of whether it had an interest in the subject property sufficient to give it standing to apply for site plan approval because that issue had been litigated and decided by Judge Handy. We agree with the partnership that the Appellate Court improperly applied the doctrine of collateral estoppel.

I

The terms "aggrievement" and "standing" have been used interchangeably throughout most of Connecticut jurisprudence. We previously have stated that "[t]he question of aggrievement is essentially one of standing . . . ." *Beckish* v. *Manafort*, 175 Conn. 415, 419, 399 A.2d 1274 (1978). Although these two legal concepts are similar, they are not, however, identical.[5] "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected."

---

[4] Because of the complex procedural history of this case and two separate decisions by trial courts, we will refer to each trial court decision by reference to the name of the trial judge to avoid any confusion.

[5] It is noteworthy that the Appellate Court itself recognized that aggrievement differs from standing to apply when it wrote of the two concepts that, "[w]hile the earlier case involved aggrievement and the present case involves standing, the underlying question common to both cases is whether the partnership has an interest in the subject property." *Gladysz* v. *Planning & Zoning Commission*, supra, 57 Conn. App. 805.

(Internal quotation marks omitted.) *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 530, 525 A.2d 940 (1987), quoting *O'Leary* v. *McGuinness*, 140 Conn. 80, 83, 98 A.2d 660 (1953); see also *Cannavo Enterprises, Inc.* v. *Burns*, 194 Conn. 43, 47, 478 A.2d 601 (1984); *Bakelaar* v. *West Haven*, 193 Conn. 59, 65, 475 A.2d 283 (1984). We traditionally have applied the following two part test to determine whether aggrievement exists: (1) does the allegedly aggrieved party have a specific, personal and legal interest in the subject matter of a decision; and (2) has this interest been specially and injuriously affected by the decision. *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 493, 400 A.2d 726 (1978); see, e.g., *Nader* v. *Altermatt*, 166 Conn. 43, 51–53, 347 A.2d 89 (1974); *New Haven* v. *Public Utilities Commission*, 165 Conn. 687, 700, 345 A.2d 563 (1974); *Johnson* v. *Zoning Board of Appeals*, 156 Conn. 622, 623, 238 A.2d 413 (1968); *Hughes* v. *Town Planning & Zoning Commission*, 156 Conn. 505, 507–508, 242 A.2d 705 (1968); *Gregorio* v. *Zoning Board of Appeals*, 155 Conn. 422, 425–26, 232 A.2d 330 (1967). Proof of aggrievement is, therefore, "an essential prerequisite to the court's jurisdiction of the subject matter of the appeal." *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 493; see also *Hughes* v. *Town Planning & Zoning Commission*, supra, 509.

We specifically have applied this standard to cases involving zoning disputes. In *Munhall* v. *Inland Wetlands Commission*, 221 Conn. 46, 51, 602 A.2d 566 (1992), we rejected the claim that dissenting members of a zoning commission have the personal interest required to be considered sufficiently aggrieved. In that case, the plaintiffs claimed an interest in the strict enforcement of the inland wetlands and watercourses regulations as the basis for their aggrievement. Id. We rejected that argument, concluding that "neither their interest as dissenting commission members nor their

general interest as residents and taxpayers rises to the level of the personal interest required in order to fall within the meaning of a 'person aggrieved.'" Id., 53. Because aggrievement is a jurisdictional question, and therefore, the "key to access to judicial review," the standard for aggrievement is rather strict. T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 535.

Conversely, the standard for determining whether a party has standing to apply in a zoning matter is less stringent. A party need have only a sufficient interest in the property to have standing to apply in zoning matters. The seminal case that established this standard is *Richards* v. *Planning & Zoning Commission*, 170 Conn. 318, 365 A.2d 1130 (1976). In *Richards*, a case similar to the present one, the board of education, which was not the owner of the property in question, claimed that it had standing to apply for a special municipal use permit for the storage and maintenance of school buses on town owned property. Id., 319. This court set forth the following standard: "From an examination of our cases and those of other jurisdictions, it is not possible to extract a precise comprehensive principle which adequately defines the necessary interest which a non-owner must possess in order to have standing to apply for a special permit or a variance. The decisions have not been based primarily on whether a particular applicant could properly be characterized as an optionee or a lessee, but, rather, on whether the applicant was in fact a real party in interest with respect to the subject property. Whether the applicant is in control of the property, whether he is in possession or has a present or, *future right to possession*, whether the use applied for is consistent with the applicant's interest in the property, and the extent of the interest of other persons in the same property, are all relevant considerations in making that determination." (Emphasis added.) Id., 323–24. In *Richards*, the court held that the board of

education had standing to apply because: (1) the board had a real interest in the proposed special use, i.e., its duty to educate the town's children; (2) the legal titleholder did not contest the board's right to apply; and (3) the town zoning regulations did not require that an applicant for a special use permit be the owner of the property. Id., 324–25.

*Richards* instructs us that, whereas a party claiming aggrievement submits to the court a jurisdictional question requiring the demonstration of a legally cognizable interest, i.e., a specific, personal legal interest in the subject property that is injured by a zoning decision, a party who claims standing to apply submits an issue requiring an examination of many factors, including the balancing of present and possibly future interests that require a showing that the applicant is a "real party in interest." Id., 323; *Loew* v. *Falsey*, 144 Conn. 67, 74, 127 A.2d 67 (1956) (holding "beneficial owner" or "equitable owner" has standing to apply); *Antenucci* v. *Hartford Roman Catholic Diocesan Corp.*, 142 Conn. 349, 355, 114 A.2d 216 (1955) (holding mere possession, even without written lease, established standing to apply). This distinction, although subtle, is not without significance, particularly in cases involving zoning disputes.

In the present case, the Appellate Court reasoned that "[t]he determination by Judge Handy that there was no evidence that the partnership possessed an interest in the property necessarily precludes any claim that the partnership possessed a substantial interest in that property." *Gladysz* v. *Planning & Zoning Commission*, supra, 57 Conn. App. 805. We agree with the partnership that the Appellate Court misapplied the *Richards* standard. Specifically, during the proceeding before Judge Handy, the partnership contested the conditions that the commission had placed on its application for site plan approval. Id., 799. Judge Handy held that the partnership, since it did not own the property,

was not aggrieved because it had no legal interest in the subject property. Id. This decision, however, had no consequential bearing on the case before Judge McWeeny. In that case, the plaintiffs, as abutting property owners who were not parties to the partnership's initial appeal, appealed from the zoning decision approving the site plan application, challenging the partnership's standing to apply. Id., 800.

We conclude, therefore, that Judge McWeeny was not bound by Judge Handy's decision and he properly determined that "standing and aggrievement may constitute separate issues" when he held that the partnership was a real party in interest with standing to apply for the site plan approval. Id. In accordance with the guidelines in *Richards*, there is a clear relationship between the site plan application and the purposes of the partnership. In particular: (1) the zoning regulations did not prohibit nonowner applications; (2) the interests of the owners, the trust that held the option to purchase the property, and the partnership, were for all practical purposes, the same interest; (3) pursuant to the regulations, the partnership had secured the written consent to apply from the owners; and (4) the partnership had expended considerable time and money on option costs and application expenses. These factors, taken collectively, sufficiently established the partnership as a real party in interest with standing to apply.

II

In light of the foregoing, we next must examine the consequences of applying collateral estoppel to the present case. Because the concepts of aggrievement and standing to apply differ in the context of zoning disputes, we conclude that the doctrine of collateral estoppel should not have controlled the Appellate Court's decision.

The fundamental principles underlying the doctrine of collateral estoppel are well established. " 'The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. *State* v. *Ellis*, 197 Conn. 436, 466, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990). Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe* v. *Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970).' " *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 116–17, 728 A.2d 1063 (1999); see also *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992). Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. *Scalzo* v. *Danbury*, 224 Conn. 124, 128, 617 A.2d 440 (1992); see also *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296, 596 A.2d 414 (1991). Thus, the issue must have been fully and fairly litigated in the first action. See *State* v. *McDowell*, 242 Conn. 648, 655, 699 A.2d 987 (1997); *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988). Collateral estoppel " 'express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest.' " *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 813, 695 A.2d 1010 (1997), quoting *State* v. *Ellis*, supra, 465; see also *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, supra, 117.

"If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705,

715, 627 A.2d 374 (1993); *Diamond National Corp.* v. *Dwelle*, 164 Conn. 540, 544, 325 A.2d 259 (1973); *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 53 Conn. App. 432, 435, 730 A.2d 1201, cert. denied, 250 Conn. 919, 738 A.2d 657 (1999). Thus, statements by a court regarding a nonessential issue are treated as merely dicta. *Jackson* v. *R. G. Whipple, Inc.*, supra, 715; see also *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 601, 674 A.2d 1290 (1996).

In the present case, the only issue before Judge Handy was whether the partnership possessed a sufficient interest in the property so as to allow it to appeal the additional conditions to the site plan application imposed by the commission. The issue before Judge McWeeny, however, involved whether under the *Richards* standards, the partnership had a real interest in the property sufficient for standing to apply.

Because the two standards are different, the issue in the prior proceeding, aggrievement, is not identical to the issue in the present proceeding, standing to apply. Consequently, collateral estoppel has no application in the absence of an identical issue.[6] By combining the two issues on appeal and applying the doctrine of collateral estoppel, the Appellate Court improperly denied the partnership its opportunity to litigate fully the question of its interest in the property.

We recognize that the application of the collateral estoppel doctrine has dramatic consequences for the party against whom the doctrine is applied. Courts should be careful that the effect of the doctrine does not work an injustice. In applying the doctrine, the court must specifically determine that an issue that is presented in the second case was necessary to the

---

[6] Judge Handy's ruling, therefore, that the partnership possessed *no interest whatsoever* in the property exceeded the necessary bounds of the issue before her.

judgment in the first case; see *Crochiere* v. *Board of Education*, 227 Conn. 333, 345, 630 A.2d 1027 (1993);[7] and that the broader purposes of the doctrine are satisfied. *State* v. *Ellis*, supra, 197 Conn. 466. This court previously has determined that " '[t]he judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate.' " Id. Accordingly, we conclude that the Appellate Court improperly merged the standards regarding aggrievement and standing to apply, and therefore improperly applied the doctrine of collateral estoppel to preclude the partnership from litigating the issue of whether it had an interest in the property and, thus, standing to apply for site plan approval.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court dismissing the plaintiffs' appeal.

In this opinion the other justices concurred.

---

[7] In *Crochiere*, this court refused to apply collateral estoppel, concluding that, with respect to a teacher termination hearing, "[a]lthough the issue of the [teacher's] conduct may have been the reason for the hearing . . . a determination of the alleged misconduct [the inappropriate touching of a female student] was not essential to the [ultimate] decision by the board to terminate the [teacher's] employment" where other statutory grounds may have formed the basis for that termination. *Crochiere* v. *Board of Education*, supra, 227 Conn. 344.