THE RYA CORPORATION ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF ENFIELD
(AC 24106)
(AC 24105)

Bishop, McLachlan and Peters, Js.

Argued October 19, 2004—officially released March 1, 2005

*Maria N. Stavropoulos,* senior assistant town attorney, with whom, on the brief, was *Christopher W. Bromson,* town attorney, for the appellant (named defendant).

*Kathryn S. Hale,* for the appellants (intervening defendant James Laughlin Sperry et al.).

*Dorian Reiser Famiglietti,* with whom was *Joseph P. Capossela,* for the appellees (plaintiffs).

*Opinion*

PETERS, J. In these consolidated appeals, a trial court sustained an appeal by a developer and a landowner from the decision of a planning and zoning commission denying their subdivision application because of the poor condition of an abutting town road. In their appeals to this court, the commission and neighboring intervenors have raised two principal issues. They maintain that the court lacked subject matter jurisdiction because the plaintiffs did not establish their aggrievement and standing to pursue their appeal. They further maintain that, on the merits, the court should have upheld the commission's denial of the subdivision application, either on the ground stated by the commission or on alternate unstated grounds supported by the record before the commission. We affirm the judgment of the trial court.

The plaintiffs, The RYA Corporation (RYA) and Myers Nursery, Inc. (Myers, Inc.), appealed to the trial court from a decision of the defendant, the planning and zoning commission of the town of Enfield (commission), denying their application for approval of a residential subdivision in Enfield. Myers, Inc., the owner of the property, had consented, in writing, to the filing of the subdivision application. RYA, the subdivision applicant, is a corporation wholly owned by Werner O. Kunzli, with whom Myers, Inc., had contracted for the development of the property. In the commission proceedings and in the trial court, several neighbors (intervenors)[1] were permitted to intervene to oppose the subdivision application.

The trial court sustained the plaintiffs' appeal. The court acknowledged that the proposed subdivision would front on the west side of Laughlin Road in Enfield, a town road that is narrow and unpaved. It held, nonetheless, that the commission lacked the authority to deny the plaintiffs' subdivision application on this ground. The court also considered and rejected the merits of the intervenors' environmental claims. In response to two motions to dismiss that had been filed by the commission and the intervenors, the court further concluded that it had subject matter jurisdiction to hear the plaintiffs' appeal because each of the plaintiffs was aggrieved and had standing to pursue the appeal.

The commission and two intervenors[2] filed separate appeals that we have consolidated for hearing and reso-

[1] In accordance with a stipulation between the parties, James Laughlin Sperry, Sharon Sperry Torrant, Marcia Lyman, Nathaniel Lyman and Suzanne Schreffler were granted intervenor status pursuant to General Statutes § 22a-19. In addition, Sperry, Sharon Sperry Torrant, Schreffler and Allan Torrant were deemed to be aggrieved pursuant to General Statutes § 8-8 a (1).

[2] Sperry and Sharon Sperry Torrant are parties to the present appeal. Their status is that of environmental intervenors as well as that of abutting landowners.

lution. The appellants renew here the issues that they raised at trial. Procedurally, they claim that the court improperly found that it had subject matter jurisdiction to hear the plaintiffs' zoning appeal. Substantively, they claim that the court improperly set aside the decision of the commission, which, in their view, should have been sustained either on the ground on which the commission expressly relied or on other grounds that allegedly were established by the record of the proceedings before the commission. We are not persuaded and affirm the judgment of the trial court.

I

## SUBJECT MATTER JURISDICTION

It is common ground that the trial court's subject matter jurisdiction to hear the plaintiffs' appeal depended on the plaintiffs' showing that at least one of them had standing to challenge the decision of the commission and was aggrieved by its outcome. See General Statutes § 8-8 (j). In their respective motions to dismiss, the commission and the intervenors claimed that neither of the plaintiffs had made either jurisdictional showing. They appeal, claiming that the trial court improperly denied their motions to dismiss. We affirm the conclusion of the trial court that it had jurisdiction to hear the plaintiffs' appeal on its merits.[3]

In *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 255–57, 773 A.2d 300 (2001), our Supreme Court reviewed the standards that determine whether an appellant in a land use case is aggrieved and has

---

[3] The intervenors also claim that the plaintiffs were required to meet the jurisdictional requirements that apply to administrative appeals. This claim is a result of the trial court's mistaken reference to the standards for appellate review that govern administrative appeals. For practical purposes, under the circumstances of this case, we can see no significant difference between zoning appeals under General Statutes § 8-8 and administrative appeals under General Statutes § 4-183, and the intervenors have not pointed one out.

standing to appeal. The court stated: "The terms aggrievement and standing have been used interchangeably throughout most of Connecticut jurisprudence. We previously have stated that [t]he question of aggrievement is essentially one of standing . . . . Although these two legal concepts are similar, they are not, however, identical. Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . We specifically have applied this standard to cases involving zoning disputes. . . . Because aggrievement is a jurisdictional question, and therefore, the key to access to judicial review, the standard for aggrievement is rather strict. T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 535." (Citations omitted; internal quotation marks omitted.) *Gladysz* v. *Planning & Zoning Commission*, supra, 255–57.

"Conversely, the standard for determining whether a party has standing to apply in a zoning matter is less stringent. A party need have only a sufficient interest in the property to have standing to apply in zoning matters. . . . [I]t is not possible to extract a precise comprehensive principle which adequately defines the necessary interest . . . . " (Citations omitted; internal quotation marks omitted.) Id., 257.

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a *colorable* claim of direct injury [that] he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the out-

come of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Emphasis added; internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 153, 851 A.2d 1113 (2004).

The trial court based its determination that each of the plaintiffs was classically aggrieved and had standing on the following findings of fact. "Myers Nursery, Inc., is a Connecticut corporation which is wholly owned by Louis Myers. It is the owner of record of the property which was the subject of this appeal. RYA Corporation is a Connecticut corporation wholly owned by Werner O. Kunzli. RYA is a real estate developer. The [plaintiffs] had entered into an agreement concerning their rights and responsibilities for the codevelopment of various parcels of land, including the subject property. Myers [Inc.] gave its consent to RYA and its agents or representatives to file the application for the subdivision approval. The application was accepted by the defendant commission with full knowledge of the agreement between the plaintiffs. During the entire application process and for a substantial period of time thereafter, the defendant commission never raised any issues concerning RYA as the applicant with the consent of Myers [Inc.] and the involvement of Myers [Inc.] as the property owner."

The court decided that Myers, Inc., and RYA were classically aggrieved because the agreement between Myers, Inc., and Kunzli gave both Myers, Inc., and RYA a specific, personal and legal interest in the approval or disapproval of the subdivision application. The court further decided that Myers, Inc., had standing as the owner of the property and that RYA had standing as the applicant and proposed developer of the property.

Our review of the court's determination that it had subject matter jurisdiction to hear the plaintiffs' appeal

is limited to an inquiry into whether the facts on which the court relied in finding aggrievement and standing were clearly erroneous. *Fox* v. *Zoning Board of Appeals*, 84 Conn. App. 628, 635, 854 A.2d 806 (2004). Although the appellants have challenged some of these findings of fact, we conclude that, on the present record, the court's decision must be sustained.

The appellants challenge three related findings of fact. They claim that the court erroneously found that (1) the plaintiffs had entered into an agreement for the development of the Myers, Inc., property, (2) the agreement between Myers, Inc., and Kunzli was an agreement between the plaintiffs, even though RYA was not named therein, and (3) the agreement provided RYA with financial benefits as the developer of the property.[4]

The difficulty with these contentions is that we do not know the underlying facts on which the trial court based its findings. The appellants might have asked the court for further articulation on this ground, but they did not do so. Practice Book §§ 60-2 and 66-5. On the present record, it is plausible that the court's factual analysis of the case was based on unstated subsidiary findings of agency. Specifically, the court might have found that RYA filed the subdivision application as Kunzli's agent because Kunzli testified that he, in fact, *was* RYA Corporation.[5] The court also might have found

[4] The intervenors also question the court's finding that the commission was aware of the relationship between the parties. They rely on the fact that the agreement is not part of the return of record and that, at trial, with permission of the court, it became a sealed rather than an open document. The commission itself, however, has not claimed that it was not fully informed about the terms of the agreement. Our examination of the agreement reveals that the parts of the agreement that led to its being sealed have no bearing on this case. The intervenors do not claim that they were unable to read the agreement. If the intervenors think, nonetheless, that the court improperly sealed the agreement, they could have raised this issue in this appeal. It is telling that they have not done so.

[5] At trial, Kunzli answered affirmatively to the question: "As the 100 percent shareholder in RYA Corporation, is it fair to say that you, Mr. Kunzli, are in fact RYA Corporation?" There was no objection to this testimony.

that RYA filed the application as Myers, Inc.'s agent because Myers so testified.[6] The court had no reason to disregard this testimony, which was not contradicted by other evidence at trial and was admitted into evidence without objection.

The appellants maintain, however, that various provisions of the agreement between Myers, Inc., and Kunzli preclude any factual finding of an agency relationship between the parties. It is true that, because the agreement contains a merger clause,[7] it is an integrated contract, which, under the parol evidence rule, may not be supplemented or varied by extrinsic evidence of the intent of the parties. *Associated Catalog Merchandisers, Inc.* v. *Chagnon*, 210 Conn. 734, 740, 557 A.2d 525 (1989).

The appellants' argument depends, therefore, on a showing that testimony about RYA's agency relationship with the signatories of the agreement should be characterized as supplementing or varying the terms of agreement. We are not persuaded that it should. As best we can tell, nothing in the agreement requires the performance of nondelegable personal duties. As the commission itself observes, Kunzli had incorporated RYA long before his agreement with Myers, Inc. The appellants have cited no case, and we know of none, to support the proposition that the parties to an integrated contract normally would spell out their expectations that an agent, rather than a designated party, would undertake the performance of a land use agreement.

---

[6] Myers testified, on behalf of Myers, Inc., that he had an agreement with Kunzli for the development of the property at issue. He further testified that the agreement allowed RYA to seek subdivisions for the property. Asked whether RYA had an agency relationship with Myers, Inc., he answered in the affirmative.

[7] Paragraph twenty-one of the agreement states: "This written Agreement constitutes the entire contract between the parties and all statements or any understandings not embodied herein shall be ineffective."

In sum, we conclude that the fact that the agreement does not refer to RYA expressly did not make it erroneous for the trial court to have found that the parties implicitly agreed to have RYA act as their agent in filing the subdivision application. The appellants have not provided persuasive grounds for us to find that any of the court's express and implicit findings were clearly erroneous.

Our inquiry into the propriety of the trial court's jurisdictional rulings must, therefore, take the trial court's findings as its point of departure. We will review separately the appellants' claims that, on the record before it, the court improperly found that both Myers, Inc., and RYA had the right to appeal from the denial of the subdivision application.

A

Myers, Inc.

Turning first to Myers, Inc., we note that, in light of Myers, Inc.'s ownership of the property to be developed, neither the commission nor the intervenors challenge Myers, Inc.'s aggrievement. The issue is whether Myers, Inc., has standing. The trial court found that Myers, Inc., had standing because it was the owner of the property and because it had a financial stake in the development of the proposed subdivision. The appellants claim that Myers, Inc., had no standing to appeal because only RYA filed the subdivision application. We disagree.

The crux of the appellants' argument is that Myers, Inc., could not be a coapplicant for subdivision approval without identifying itself as such on the face of the application. In their view, it is irrelevant that the application identified Myers, Inc., as the owner of the property and that the application was accompanied by an

attached form manifesting Myers, Inc.'s consent to the filing of the application. We are not persuaded.

Although Myers, Inc.'s consent form was attached to RYA's application for subdivision approval of a designated piece of property, the form does not describe the property to which it applies. Instead, it authorized RYA to apply "to any local, state or federal agency in connection with the development of a residential subdivision on this property."

The appellants argue that the relationship between Myers, Inc., and RYA is established definitively by the terms of the consent form. In their view, because the consent form did not expressly designate RYA as Myers, Inc.'s agent to file this subdivision application and because RYA did not identify itself as Myers, Inc.'s agent on this application, the court improperly held that Myers, Inc., had standing to appeal. We disagree.

In the absence of evidence at trial about the intent of the parties in agreeing to the placement of the consent form and to its terms, the meaning to be ascribed to these documents is a question of law. As a matter of law, we are not persuaded that the trial court was required to read these documents as narrowly as do the appellants. Taking into account the totality of the relationship between Myers, Inc., and RYA, the court had the authority to conclude that the physical linkage between the application and the consent form gave Myers, Inc., a sufficient interest to have standing to contest the denial of the proposed subdivision. This conclusion is supported not only by the nature of the documentation itself but because, as noted previously, the court reasonably might have found that RYA was acting as Myers, Inc.'s agent in filing the subdivision application.

The appellants argue, however, that regardless of what the relationship between Myers, Inc., and RYA

might have been in fact, our decision in *D.S. Associates* v. *Planning & Zoning Commission*, 27 Conn. App. 508, 607 A.2d 455 (1992), definitively establishes that Myers, Inc., did not have standing. In *D.S. Associates*, the question of standing arose in the following context. At the time of the appeal, the original applicant no longer owned the property, and the applicant's successor had not refiled the application. Id., 510, 512. The local subdivision regulations unambiguously required a subdivision application to be filed by "the owner(s) of record of the subject property or by an authorized agent . . . ." (Internal quotation marks omitted.) Id., 511. *D.S. Associates* held that the original applicant could not appeal because it was no longer aggrieved and that the applicant's successor could not appeal because it lacked standing to do so. Id., 512.

We agree with the plaintiffs that *D.S. Associates* does not control this case. In contrast to the terms of the regulations in *D.S. Associates*, § 4.a.2 of the Enfield subdivision regulations provides in relevant part that "the record owner *or* developer may submit a formal application for subdivision approval."[8] (Emphasis added.) Furthermore, in this case, the commission had before it a consent form expressly identifying Myers, Inc., as having an interest in the subdivision application.

*Michel* v. *Planning & Zoning Commission*, 28 Conn. App. 314, 612 A.2d 778, cert. denied, 223 Conn. 923, 614 A.2d 824 (1992), is more closely analogous. In that case, the issue was whether a lessee of the property had standing to apply for a zone change and special excep-

[8] The appellants note that other provisions in the Enfield subdivision regulations create an ambiguity about the meaning of § 4.a.2. Consistently, § 1.e defines "developer" as "record owner or subdivider." Section 1.i, however, defines "record owner or subdivider" in relevant part as "[t]he owner of record at the time application for subdivision is made . . . ." On the present record, we are disinclined to resolve this ambiguity by ignoring the express language of § 4.a.2.

tion permit. Id., 323–24. We agreed with the trial court's finding that the consent of two landowners to their lessee's application for a special use permit reasonably could be construed to make the landowners joint petitioners for the permit. Id. Although the underlying issue was the standing of the lessee rather than that of the landowners, we find the analysis in *Michel* to be persuasive here. In this case, the trial court reasonably could have found that Myers, Inc.'s consent made it a coapplicant with RYA and thus gave it standing to appeal from the denial of the subdivision application.

We came to a similar conclusion in *DiBonaventura* v. *Zoning Board of Appeals*, 24 Conn. App. 369, 588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129 (1991). Concededly, that case involved aggrievement rather than standing. In light of the close relationship between these two concepts, we nonetheless find its discussion of the significance of a landowner's consent to be enlightening. In *DiBonaventura*, we held that a landowner who had consented to an application for a regulated use of his property had a "specific, personal and legal interest in the proposed [use of his property]." Id., 375. Even in the absence of a formal lease, purchase contract or option, his consent was sufficient to establish that he had an interest in the land use application that distinguished him from other members of the community as a whole. Id., 376.

In accordance with these precedents, the finding of the trial court that Myers, Inc., had standing was not clearly erroneous. As an expressly consenting landowner, Myers, Inc., has a specific, personal and legal interest in an application for improvement of its property. As a consequence, it had "a colorable claim of direct injury [that it had] suffered or [was] likely to suffer, in an individual or representative capacity." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, supra, 270 Conn. 153. No more is required.

Because Myers, Inc.'s aggrievement and standing conferred subject matter jurisdiction on the trial court, we need go no further. The commission so concedes.

B

RYA

In the exercise of judicial prudence, we will nonetheless briefly consider whether RYA was aggrieved. The commission does not take issue with the trial court's finding that RYA had standing because it expected to obtain financial benefits from the proposed development.[9] The court found that RYA was aggrieved because it stood to profit from performance of the agreement between Myers, Inc., and Kunzli. Although the appellants challenge the propriety of the latter finding, we agree with the court.

The plaintiffs acknowledge that RYA had to establish that it was classically aggrieved because there was no statutory basis for its appeal. "Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest." (Internal quotation

[9] We recognize that the intervenors also challenge RYA's standing. Their argument is premised on their disagreement with the court's finding that RYA had standing because the agreement between Myers, Inc., and Kunzli clearly provided RYA with financial benefits as the developer of the property.

The intervenors again rely on *D.S. Associates* v. *Planning & Zoning Commission*, supra, 27 Conn. App. 508. Much of the discussion in *D.S. Associates*, however, concerned the issue of aggrievement. With respect to standing, we did not question the standing of the partnership that originally had filed the land use application. We held only that a corporate successor to the partnership did not have standing because it had not refiled the application. Id., 512. In this case, by contrast, RYA itself filed the subdivision application. We are persuaded, therefore, that RYA had standing to appeal.

marks omitted.) *Stauton* v. *Planning & Zoning Commission*, 271 Conn. 152, 157, 856 A.2d 400 (2004).

In this case, the trial court found that the agreement between Myers, Inc., and Kunzli gave RYA a specific, personal and legal interest in the proposed development. This finding is unassailable in light of our conclusion that the record before the court permitted it inferentially to find that RYA had an agency relationship with Myers, Inc., and Kunzli. We may presume that RYA's participation in the subdivision plan was not intended to be eleemosynary. It follows that RYA had a specific, personal and legal interest in the approval of its subdivision application.

In conclusion, the trial court properly found that it had subject matter jurisdiction to hear the plaintiffs' appeal from the commission's denial of RYA's subdivision application. Despite the appellants' argument to the contrary, Myers, Inc., and RYA were each aggrieved by this denial and each had standing to contest its validity.

## II

### THE MERITS OF THE COURT'S JUDGMENT

On the merits, the appellants argue that the trial court improperly set aside the commission's denial of RYA's subdivision application. In their view, the commission did not act unreasonably, arbitrarily and in abuse of its discretion by denying the application because of safety concerns relating to the poor condition of Laughlin Road. They agree with the court's finding that the contemplated use of the property for six single-family residential building lots was consistent with Enfield zoning regulations that had placed this property in a residential zone. They disagree, nonetheless, with the court's ultimate finding that the commission's decision was unsus-

tainable and urge us to reverse the judgment of the court. We are not persuaded.

The return of record discloses that the commission held several public hearings with respect to RYA's subdivision application. The commission was informed, by its town planner and its town attorney, that Laughlin Road was an existing town road, which RYA could not be required to improve. The trial court so found. The commission also heard, however, that Laughlin Road was narrow and unpaved. The local fire marshal expressed his view that, in its present condition, the road was unsatisfactory for use by emergency vehicles.

On January 18, 2001, the members of the planning and zoning commission (commissioners) unanimously voted to deny the subdivision application. For each of them, safety was the dispositive issue.[10] Consistent with the commission's decision, when the town planner informed RYA of the commission's decision, he stated that "[t]he reasons cited may be found in the record, the prevailing one being fire safety issues."

One additional uncontested fact was presented to the trial court. The court observed that "the town of Enfield allowed and permitted the construction of two residences by the intervenors across the roadway from the subject property upon receipt from the property owners of waivers of future requests to improve Laughlin Road."[11] The record does not disclose how the interve-

---

[10] Each of the commissioners voted against a motion to approve the application with conditions. The chairman, Francis Costanzo, stated that there was a "blatant and obvious problem in fire protection . . . ." Commissioner Elizabeth Ballard stated, "I think the safety factor is our biggest thing . . . ." Commissioner Frank Dentamaro stated that "safety is a paramount issue for our residents of this town and of any town." Commissioner James Howard stated, "I can't imagine what [danger] this road would pose to our fire department and the safety of our firemen . . . ." Commissioner Nicles Lefakis agreed with his colleagues "about the safety issue . . . ."

[11] Although RYA offered to make some changes to improve the safety of the road, its subdivision application did not include an offer of similar waivers.

nors' waivers of requests for the improvement of Laughlin Road mitigated the commission's concerns in this case about the safe use of the road by the general public or by emergency vehicles.

The appellants do not defend the commission's decision to deny the plaintiffs' subdivision application as it stands. Apparently, the Enfield subdivision regulations do not expressly require a subdivision developer to take responsibility for the safety of an abutting town road.[12] On the record, the commission was not asked to consider, and did not consider, any other Enfield subdivision regulations that might impinge on the plaintiffs' application. The court likewise did not do so.

The court decided, unequivocally, that "[t]he record fail[ed] to disclose *any* basis for the commission's decision other than the condition of Laughlin Road." (Emphasis added.) In oral argument before the trial court and in trial briefs, the court had, however, been presented with extensive arguments based on the applicability of other Enfield regulations that, on the record, the commission did not consider.[13] The court did not refer to these regulations in its memorandum of decision. None of the appellants asked the court to articulate the grounds for its disagreement with these regulatory claims.

Despite the absence of clarification of the court's decision, the appellants maintain that, having decided

[12] This case, therefore, does not present an opportunity to address the question, left open in *Property Group, Inc.* v. *Planning & Zoning Commission*, 226 Conn. 684, 685–86, 628 A.2d 1277 (1993), whether a town may enact regulations authorizing a planning and zoning commission to condition its approval of a subdivision application on the applicant's widening of a public road abutting the proposed subdivision.

[13] The appellants sought to justify the commission's decision on the ground that § 5.b of the Enfield subdivision regulations required the plaintiffs to show not only that Laughlin Road had become a town road but also that it had been a road accepted by the town council. The plaintiffs argued that § 5.b was inapplicable because it applied only to new roads *within* a subdivision.

that the commission's decision was unsustainable on the ground on which it was rendered, the court had an affirmative obligation to search the commission record for alternate grounds that would support the denial of the plaintiffs' application. The appellants concede that, as a general proposition, "[w]hen a commission states its reasons in support of its decision on the record, the court goes no further . . . ." *Azzarito* v. *Planning & Zoning Commission*, 79 Conn. App. 614, 618, 830 A.2d 827, cert. denied, 266 Conn. 924, 835 A.2d 471 (2003); see also *DeMaria* v. *Planning & Zoning Commission*, 159 Conn. 534, 541, 271 A.2d 105 (1970). They rely, instead, on cases that have held that a commission's statement of its reasons is dispositive only if the commission "has rendered a formal, official, collective statement of reasons for its action. . . . It does not apply to mere utterances of individual members of the agency." (Citation omitted; internal quotation marks omitted.) *Harris* v. *Zoning Commission*, 259 Conn. 402, 420, 788 A.2d 1239 (2002); see also *Smith-Groh, Inc.* v. *Planning & Zoning Commission*, 78 Conn. App. 216, 226, 826 A.2d 249 (2003).

The question before us is, therefore, whether this case falls within the rule or within the exception. The commission maintains that, in this case, the record does not contain a formal, official, collective statement of reasons. We disagree. On January 18, 2001, the commission met for the sole purpose of reaching a decision on the plaintiffs' application. Each commissioner formally voted on a motion by Commissioner James Howard, as amended by Commissioner Nicles Lefakis, to approve the plaintiffs' application with twenty-three conditions. In doing so, each commissioner voted against this motion because of "the safety factor."[14] It would be absurd to hold that the fact that each commissioner independently stated the reason for his or her vote

---

[14] See footnote 10.

meant that the commission members did not act collectively. Keeping in mind the informality with which zoning commission members normally conduct their proceedings; *Caserta* v. *Zoning Board of Appeals*, 219 Conn. 352, 362, 593 A.2d 118 (1991); we are persuaded that the record in this case shows that the commissioners made a formal, official and collective statement about the commission's reason for denying the subdivision application.

The cases on which the commission relies are readily distinguishable. In *Harris* v. *Zoning Commission*, supra, 259 Conn. 402, "no member [of the commission] stated reasons for his or her individual vote." Id., 422. In *Smith-Groh, Inc.* v. *Planning & Zoning Commission*, supra, 78 Conn. App. 225, the only statement of record of the reasons for denial of a site plan application were those stated in a letter signed by the town planner rather than by a commissioner. The reasons stated in the letter went beyond those stated by two commission members. Id. Our case is different. Under the circumstances here, the record supports the plaintiffs' argument that the members of the commission decided collectively to deny the plaintiffs' subdivision application.

The appellants do not challenge the proposition that, if the court properly found that the commissioners had stated their collective denial of the plaintiffs' application in proper form, the court did not have to search for alternate reasons to sustain the decision of the commissioners. With respect to the issues raised by the commission, therefore, the commissioners' collective denial of the application for safety reasons, for which there was no regulatory basis, was sufficient to sustain the plaintiffs' appeal.

The intervenors, however, raise several additional issues arising out of their status as environmental intervenors pursuant to General Statutes § 22a-19. They

maintain that the trial court improperly failed to address (1) their regulatory claim that existing Enfield zoning regulations required denial of an application for subdivision that abutted on an unsafe town road and (2) their environmental claims about risk of injury to open spaces and to trees. We are not persuaded.

We already have discussed that we lack a proper basis to consider the merits of the regulatory argument made by the commission. In the absence of a discernable difference between the commission's argument and that of the intervenors, we need not further address the intervenors' regulatory claims.

With respect to the intervenors' environmental claims, we note that the court's opinion shows that the court took environmental concerns into account. The court observed that a number of environmentally related agencies had signed off on the proposed development.[15] All of the concerns that were expressed related to the safety of Laughlin Road.[16]

The trial court then addressed two specific claims raised by the intervenors. The intervenors claimed that

---

[15] The court noted that "[t]he north central district health department indicated that the soil conditions for the proposed lots are well drained and the proposed areas of the septic systems appear satisfactory. However, water tests would be required (they were subsequently done and proved satisfactory). None of the Myers, [Inc.] property had wetlands or watercourses. The proposed subdivision was also referred to the Capitol Region Council of Government for comment since the subject parcel was within 500 [feet] of the Ellington town line. Their only concerns were for the preservation of farmland and open space. The town of Enfield water pollution control [authority] had no comments."

[16] The court observed that "[c]omments were solicited from the board of education. Their response primarily concerned sidewalks and children's safety. School bus service would not be possible. The administrative review team again met on August 30, 2000, and addressed a number of issues, again expressing concerns about the condition of Laughlin Road. Similar concerns were raised by staff and the town of Ellington [about] the impact on their Griswold Road (the continuation of Laughlin Road as it enters Ellington). The Hazardville fire district claimed that the width and condition of Laughlin Road was inadequate and unsatisfactory for emergency vehicles."

§ 22a-19 required denial of the subdivision application for a number of environmental reasons. They maintained that the contemplated construction would do damage to ancient trees in the immediate vicinity of the subdivision. The court found, however, that "the so-called ancient trees" are not "on or immediately adjacent to the Myers, [Inc.] property." The intervenors have not challenged the accuracy of this finding of fact. They further maintained that the plaintiffs bore responsibility for designation of Laughlin Road as a scenic road. The court found, to the contrary, that such a designation required approval by the Enfield town council and by the majority of the property owners affected thereby. Again, the intervenors have voiced no disagreement with the court's finding.

The intervenors recognize that the court demonstrated its concern for environmental issues in its memorandum of decision by suggesting that "[s]ince the applicant will be required to designate some of the land as open space or make a payment in lieu thereof, the parties might wish to consider the moving of Laughlin Road to the west onto the land of Myers, [Inc.] and whatever land Myers, [Inc.] loses can be considered as its payment in lieu of in order to save the ancient trees."

According to the intervenors, however, the court should have taken a more proactive role. They maintain that § 22a-19 required the court to make findings about the possibility that the proposed subdevelopment would result in unreasonable destruction of natural resources and about the feasibility of alternate uses of the property that would be environmentally preferable. In effect, they assume that implementation of the subdivision plan, on its face, would create a cognizable risk of environmental damage. The problem with the intervenors' position is that the record does not contain any factual findings to support their assumption. Clearly, the commissioners did not base their decision on any

environmental reason other than the condition of Laughlin Road. Equally clearly, the intervenors did not ask the trial court to supplement its memorandum of decision by making express findings concerning the environmental risks that the intervenors envisage. We cannot fill the evidentiary gap.

We conclude that the trial court reasonably determined that the Enfield commission improperly denied the plaintiffs' subdivision application. The record of the proceedings before the commission and the court demonstrates that the court had a factual basis for finding that (1) the commissioners turned down the plaintiffs' application because of the unsafe condition of an abutting town road, (2) the commissioners reached this decision by rendering a formal, official, collective statement of their reason for denying the application and (3) environmental concerns did not provide an alternate basis for sustaining the decision of the commission to deny the plaintiffs' subdivision application.

## III

### THE COURT'S MANDATE

The trial court sustained the plaintiffs' appeal without directing the commission to take any particular action with respect to the plaintiffs' subdivision application. The commission argues that the court should have given the commission specific directions about the implementation of the court 's judgment. Specifically, the court should have informed the appellants whether the plaintiffs' application must now be approved as it stands or whether the plaintiffs may yet be required to comply with other provisions of the Enfield subdivision regulations.

The court sustained the plaintiffs' appeal on the basis of its finding that "the commission did act unreason-

ably, arbitrarily and/or in abuse of its discretion . . . . The record fails to disclose any basis for the commission's decision other than the condition of Laughlin Road. . . . The property is properly zoned and the requisite frontage is available." Once again, neither appellant asked the court for an elaboration of its decision.

The court unambiguously held, and we have agreed, that the commission improperly denied the plaintiffs' subdivision application for safety reasons. We have further agreed with the court 's implicit holding that it was not required to address the merits of potentially applicable alternate regulatory or environmental grounds for denial of the plaintiffs' application.

Although the commission has not spelled out the nature of its alleged confusion about the court's mandate, we assume that the commission wonders whether, on remand, it may now deny the plaintiffs' application on grounds other than the unsafe condition of Laughlin Road. It has cited no authority for its right to do so. It is now the law of this case that, on the ground stated, the commission abused its administrative authority in denying the application because of safety concerns arising out of the poor condition of Laughlin Road.

To allow the commission to expand its administrative review of the plaintiffs' subdivision application by belatedly considering additional objections to the plaintiffs' application, each of which could have been raised earlier, would subject the plaintiffs to indefinite delay that the Enfield regulations do not authorize. We conclude, therefore, that the plaintiffs' application must be approved as it stands.

The judgment is affirmed and the case is remanded to the commission with direction to grant the plaintiffs' subdivision application.

In this opinion the other judges concurred.